1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              NORTHERN DISTRICT OF CALIFORNIA

10                                   San Francisco Division

11   ROCHELLE NICOLE RODRIGUEZ,            Case No. 4:20-cv-07073-YGR (LB)
     individually, and as Personal Representative   (Consolidated Case No. 4:21-cv-01527-
12   of the Estate of JAMAL MARQUEZ        YGR (LB))
     JORDAN, Deceased,
13                                          **ORDER GRANTING MOTION TO**
                     Plaintiff,            **COMPEL**
14
           v.                              Re: ECF No. 140
15
     SEABREEZE JETLEV LLC, SEABREEZE
16   JET SKI, LLC, and H2O SPORTS
     HAWAII, LLC,
17
                     Defendants.
18

19                                      **INTRODUCTION**

20       The parties dispute whether the decedent's daughter (Savannah Jordan) and sister (Shirena

21   Brown) and Savannah Jordan's mother (Tracy Maldonado) (collectively, non-party witnesses)

22   must answer certain questions and provide certain documents that have been withheld based on

23   attorney-client privilege, the work-product doctrine, and the common-interest doctrine.[1] The

24   defendants contend that the testimony and documents are not protected by any privilege because

25

26

27   ───────────────
     [1] Mot. – ECF No. 140; Opp'n – ECF No. 145. Citations refer to material in the Electronic Case File
28   (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    (1) the non-party witnesses' interests are not aligned with the plaintiff's interests and (2) the non-

2    party witnesses did not have counsel until after December 2021.[2]

3         The court can decide the motion to compel without oral argument. N.D. Cal. Civ. L.R. 7-1(b).

4    The court grants the defendants' motion to compel.

5         The non-party witnesses who are not beneficiaries of the decedent's estate (presumably, only

6    the decedent's daughter, Ms. Jordan) do not have a common legal interest with the plaintiff based

7    on a mere financial interest in maximizing damages against the defendants. The non-party witnesses

8    do, on the other hand, have a common interest with the plaintiff to the extent the plaintiff is the only

9    person able to maintain this wrongful death action under applicable maritime laws. In any event,

10    none of the non-party witnesses had an agreement to pursue a joint legal strategy until after

11    December 2021.

12         Thus, the common-interest doctrine preserves the privilege only with respect to the plaintiff's

13    communications with the non-party witnesses who are beneficiaries of the estate that occurred after

14    they reached an agreement to pursue a joint legal strategy sometime after December 2021. The

15    common-interest doctrine does not preserve the privilege with respect to the plaintiff's

16    communications with the non-party witnesses who are not beneficiaries of the estate irrespective of

17    the timing of those communications.

18         During their depositions, the non-party witnesses erroneously relied on the common-interest

19    doctrine when they refused to answer questions. The non-party witnesses refused to answer

20    deposition questions that did not necessarily reach privileged communications between themselves

21    and their counsel. For example, questions concerning whether and when they obtained counsel, the

22    general purpose of the work performed, and the dates and duration of meetings are not objectionable.

23         The non-party witnesses must (1) reappear for further deposition questioning and answer

24    questions that seek non-privileged information consistent with this order and (2) produce responsive

25    non-privileged documents. If any responsive documents are withheld based on privilege, the non-

26    party witnesses must provide a privilege log that includes enough detail to assess whether the

27

28    [2] Mot. – ECF No. 140 at 3, 7–8.

1    assertion of privilege is justified. The court declines to compel counsel for the non-party witnesses

2    or plaintiff to pay the cost of re-noticing the depositions.

3

4                                              **STATEMENT**

5         This is a wrongful-death action arising from the October 2019 death of Jamal Jordan in

6    Hawaii.[3] The plaintiff, Rochelle Nicole Rodriguez, is the decedent's widow and is seeking

7    wrongful-death and survival damages in this action on behalf of the decedent's estate.[4] The

8    plaintiff is also seeking emotional-distress damages on her own behalf.[5]

9         There are two related cases. The first related case is *In re Seabreeze Jetlev, LLC, et al.*, No.

10   4:21-cv-01527-YGR, where the owners of the vessel involved in the incident sought exoneration

11   or a limitation of liability under 46 U.S.C. § 30501, *et seq.* and Rule F of the Supplemental Rules

12   for Admiralty or Maritime Claims and Asset Forfeiture Actions.[6] This limitation action was

13   initially filed in the District of Hawaii and then transferred to this district, where it was

14   consolidated with the wrongful-death action.[7] The district court recently granted default judgment

15   against all non-appearing claimants, including the decedent's daughter Savannah Jordan, except

16   for claims that have been brought on Ms. Jordan's behalf by the plaintiff Rochelle Rodriguez.[8]

17        The second related case is an interpleader action, *Admiral Insurance Co. v. Rochelle Nicole*

18   *Rodriguez, et al.*, No. 4:22-cv-01701-YGR. In that action, the district court issued an order

19

20

21

22

---

23   [3] First Am. Compl. – ECF No. 4.

     [4] *Id.* at 8–14 (¶¶ 12–28).

24   [5] *Id.* at 14–15 (¶¶ 29–33).

25   [6] Compl. – ECF No. 1 at 2–3 (¶ 1) (Case No. 4:21-cv-01527-YGR); Order – ECF No. 45 at 3–4 (Case No. 4:21-cv-01527-YGR).

26   [7] Order Granting Mot. to Transfer – ECF No. 18 (Case No. 4:21-cv-01527-YGR); Order Consolidating

27   Cases – ECF No. 33.

     [8] Order – ECF No. 65 at 2 (Case No. 4:21-cv-01527-YGR); R. & R. – ECF No. 45 (Case No. 4:21-cv-

28   01527-YGR).

United States District Court
Northern District of California

1   permitting the insurer of the defendants to deposit the $1 million policy limit with the court given
2   the potential competing claims against the policy by the plaintiff and Ms. Jordan.[9]

3       The parties in the wrongful-death action were close to reaching a settlement in December
4   2021, but because of the defendant's request for the decedent's daughter to sign the release, the
5   case did not settle.[10]

6       This current discovery dispute concerns the following non-party witnesses: (1) the decedent's
7   daughter, Ms. Jordan; (2) the decedent's sister, Shirena Brown; and (3) Ms. Jordan's mother,
8   Tracy Maldonado.[11] The defendants' counsel attempted to question these non-party witnesses
9   during depositions in March 2022 about their interests in the litigation and disagreements with the
10  plaintiff, Ms. Rodriguez.

11      For example, counsel for the defendants asked Ms. Maldonado if she hired an attorney for
12  herself or for Ms. Jordan in connection with Mr. Jamal's passing.[12] The defendants' counsel also
13  asked Ms. Maldonado when she learned about the wrongful-death lawsuit, whether anyone told
14  her not to contact the defendants' counsel, and whether a guardian ad litem was appointed for Ms.
15  Jordan.[13] Counsel also asked about Ms. Maldonado's correspondence with plaintiff's counsel, her
16  disagreements with the plaintiff, and her conversations with the plaintiff.[14] In each case, counsel
17  for Ms. Maldonado (Philip Pillsbury) objected based on attorney-client privilege and the common-
18  interest doctrine.

19      During Ms. Jordan's deposition, her counsel (also Mr. Pillsbury) objected — based on
20  attorney-client privilege and the common-interest doctrine — to similar questions. Counsel

---

[9] Compl. – ECF No. 10 (Case No. 4:22-cv-01701-YGR); Mot. to Deposit Funds – ECF No. 34 (Case No. 4:22-cv-01701-YGR); Order – ECF No. 37 (Case No. 4:22-cv-01701-YGR).

[10] Opp'n – ECF No. 145 at 3; Tr. of Dec. 13, 2021 Hr'g – ECF No. 71 at 9 ("If and when we reach a settlement — and we have not reached one yet — if and when we reach a settlement and if that settlement occurs before January 12th, 2022, it has always been our intention to take that settlement back to the probate court who appointed the Plaintiff in this case under California Probate Code Section 2505, to have a guardian ad litem appointed[.]").

[11] Mot. – ECF No. 140 at 3–4.

[12] Maldonado Dep. Tr., Ex. A to Schultz Decl. – ECF No. 140-1 at 8.

[13] *Id.* at 9–12.

[14] *Id.* at 14–23.

United States District Court
Northern District of California

objected to questions asking (1) whether she hired an attorney in connection with her father's death, (2) whether she hired Mr. Pillsbury, (3) whether Ms. Maldonado told her about disagreements between Ms. Maldonado and the plaintiff, (4) whether she had heard the term "guardian ad litem," (5) whether anyone ever asked if she wanted a guardian appointed for her, (6) whether she knew that the defendants offered their insurance policy limits, and (7) whether she had any agreements with the plaintiff about sharing any settlement payment.[15]

Furthermore, during Ms. Brown's deposition, counsel objected to questions about (1) the nature of disagreements between Ms. Maldonado and the plaintiff, (2) whether Ms. Jordan had an opportunity to bring her own claim in this lawsuit, (3) whether she had any disagreements with the plaintiff, (4) whether she had spoken with anyone to determine if she had any claims in this lawsuit, and (5) whether she considered outside the presence of attorneys if the plaintiff had a conflict based on her pursuit of claims for her own emotional distress and claims for the decedent's estate.[16]

The non-party witnesses have also withheld documents based on attorney-client privilege and the common-interest doctrine.[17] The witnesses did not provide a privilege log.[18] The defendants moved for an order compelling the non-party witnesses to (1) respond to questions that counsel instructed them not to answer based on the common-interest doctrine and attorney-client privilege and (2) produce documents withheld based on the common-interest doctrine and attorney-client privilege.[19] The defendants also asked for an order directing counsel for the non-party witnesses to pay the cost of re-noticing the depositions.[20]

---

[15] Jordan Dep. Tr., Ex. B to Schultz Decl. – ECF No. 140-1 at 32–47.

[16] Brown Dep. Tr., Ex. C to Schultz Decl. – ECF No. 140-1 at 51–57.

[17] Objs. to Reqs. for Produc., Exs. D–E to Schultz Decl. – ECF No. 140-1 at 58–73.

[18] Mot. – ECF No. 140 at 7.

[19] *Id.* at 2.

[20] *Id.*

United States District Court
Northern District of California

**LEGAL STANDARDS**

"Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Federal Rule of Evidence 501); *see also Heathman v. U.S. Dist. Ct.*, 503 F.2d 1032, 1034 (9th Cir. 1974) ("[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege."). Federal law applies to privilege-based discovery disputes involving federal claims, even if allied with pendent state-law claims. *See*, *e.g.*, *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 687 (E.D. Cal. 1993); *Martinez v. City of Stockton*, 132 F.R.D. 677, 681–83 (E.D. Cal. 1990).

The claims here arise under federal maritime law and Hawaii state law, and the plaintiffs' complaint alleged jurisdiction under 28 U.S.C. §§ 1332–33.[21] Accordingly, federal law governs attorney-client privilege. *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 327 (N.D. Cal. 1985) (holding that federal common law governed privilege issues in a case where claims sounded in admiralty and maritime law).

### 1. Attorney-Client Privilege

An eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (cleaned up).

"[The] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *Id.* (cleaned up). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* at 608 (cleaned up); *see also In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th

---

[21] First Am. Compl. – ECF No. 4 at 2, 9 (¶¶ 1, 13).

1   Cir. 2012) ("[W]e construe [the attorney-client privilege] narrowly to serve its purposes.")

2   (cleaned up).

3       "Not all communications between attorney and client are privileged. Our decisions have

4   recognized that the identity of the client, the amount of the fee, the identification of payment by

5   case file name, and the general purpose of the work performed are usually not protected from

6   disclosure by the attorney-client privilege." *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129

7   (9th Cir. 1992). In short, "[t]he privilege does not extend . . . beyond the substance of the client's

8   confidential communications to the attorney." *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

9       But "correspondence, bills, ledgers, statements, and time records which also reveal the motive

10  of the client in seeking representation, litigation strategy, or the specific nature of the services

11  provided, such as researching particular areas of law, fall within the privilege." *Clarke*, 974 F.2d at

12  129 (cleaned up). Accordingly, a witness may decline to answer questions that would reveal the

13  specific nature of legal advice received.

14      For example, a witness may decline to answer questions such as: "How many meetings were

15  there with [your counsel] or any one from his office to form the [limited partnership]?" *United*

16  *States v. Landon*, No. C 06-3734 JF (PVT), 2006 WL 3377894, at *4 (N.D. Cal. Oct. 30, 2006).

17  This question is inappropriate because the answer would confirm the specific nature of the legal

18  advice received. *Id.*

19      Some questions may or may not implicate privileged material depending on the answer. For

20  instance, consider the following question: "How did the idea of forming the [limited partnership]

21  come about?" *Id.* at *3. The answer is privileged if the idea came from the witness's attorney, but

22  not if the idea came prior to, or independent of, consultation with an attorney. *Id.*; *see also Bell v.*

23  *Ken Lee*, No. 13-cv-05820-SI, 2017 WL 1956828, at *3 (N.D. Cal. May 11, 2017) (holding that

24  billing records of an attorney and private investigator that established the date on which the

25  photographs of the plaintiff were taken were not privileged because they would not reveal

26  litigation strategy or the specific nature of the services provided).

27      Furthermore, material concerning the dates and duration of meetings with attorneys "is not

28  attorney-client privileged and it is not attorney work product." *Gallegos v. Roman Cath.*

United States District Court
Northern District of California

*Archbishop of S.F.*, No. 3:16-cv-01588-LB, 2017 WL 740813, at *1 (N.D. Cal. Feb. 27, 2017). And the fact that a client reached a decision on some issue is not necessarily privileged "even if that decision was informed by advice from legal counsel" because "[t]he privilege protects only communications, not facts." *In re MacBook Keyboard Litig.*, No. 18-cv-02813-EJD (VKD), 2020 WL 1265629, at *3 (N.D. Cal. Mar. 17, 2020).

Of course, communications may be privileged even if they occur before the attorney is formally retained. For example, communications from prospective clients with the aim of obtaining legal services are generally covered by the attorney-client privilege, even if the attorney is not ultimately retained. *Barton v. U.S. Dist. Ct.*, 410 F.3d 1104, 1111–12 (9th Cir. 2005) (construing the attorney-client privilege under California law); *Bolding v. Banner Bank*, No. C17-0601RSL, 2021 WL 1530998, at *2 (W.D. Wash. Apr. 19, 2021) (construing the attorney-client privilege under federal law).

### 2. Common-Interest Doctrine

The common-interest doctrine is not an independent privilege. Rather, it is "a narrow exception to the general rule that disclosing information to a third party constitutes a waiver of the attorney-client privilege." *Integrated Glob. Concepts, Inc. v. j2 Glob., Inc.*, No. 5:12-cv-03434-RMW (PSG), 2014 WL 232211, at *2 (N.D. Cal. Jan. 21, 2014) (citation omitted); *see also In re Pac. Pictures Corp.*, 679 F.3d at 1121 ("Rather than a separate privilege, the 'common interest' or 'joint defense' rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other."). Given that the common-interest doctrine "is an anti-waiver exception," the doctrine applies "only if the communication at issue is privileged in the first instance." *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW (LB), 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015) (cleaned up).

To successfully invoke the doctrine, the party asserting the privilege must show: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *See*

United States District Court
Northern District of California

*United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003*)* (cleaned up). "The privilege does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects." *Id.* (cleaned up). The parties, however, must have "a common legal, as opposed to commercial, interest." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007) (cleaned up).

In this respect, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. "Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *Id.* To be clear, a written agreement is not required and a joint defense or prosecution agreement "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or [who] have common interests in litigation." *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012).

The common-interest doctrine has, in general, only been applied where both parties are represented by counsel. *Regents of Univ. of Cal. v. Affymetrix, Inc.*, 326 F.R.D. 275, 281 (S.D. Cal. 2018) ("While this Court was not able to locate any Ninth Circuit precedent that explicitly requires both parties be represented by separate counsel, [neither] was there any precedent that extended the benefits of the common interest exception to the attorney client privilege when the disclosure at issue involved an unrepresented third-party employed by a separate entity."); *see also Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965) ("[W]here two or more persons who are subject to possible indictment in connection with the same transactions make confidential statements to their attorneys, these statements, even though they are exchanged between attorneys, should be privileged to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings.").

Restricting the application of the common-interest doctrine to represented parties is appropriate because the doctrine is based on the parties reaching an agreement to pursue a joint legal strategy. *Rembrandt Pat. Innovations, LLC v. Apple Inc.*, No. C 14-05093 WHA, 2016 WL 427363, at *7 (N.D. Cal. Feb. 4, 2016) (holding that the joint-defense exception "protects only

1  those communications that are part of an on-going and joint effort to set up a common defense

2  strategy"). Thus, both parties should be represented by counsel before participating in a joint legal

3  strategy. *See* Restatement (Third) of the Law Governing Lawyers § 76 cmt. d (Am. L. Inst. 2000)

4  ("A person who is not represented by a lawyer and who is not himself or herself a lawyer cannot

5  participate in a common interest arrangement within this Section.").

6       Furthermore, the doctrine applies more strongly when the disclosure is made in the presence of

7  counsel. *See United States v. Austin*, 416 F.3d 1016, 1019 (9th Cir. 2005) ("[C]ourts have

8  generally held that the joint defense privilege does not cover conversations among defendants

9  made outside counsel's presence."); *United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir. 1987)

10 ("The 'common interest' rule protects communications made when a nonparty sharing the client's

11 interests is present at a confidential communication between attorney and client."); *Sapphire Sales*

12 *Sols., LLC v. Best W. Int'l, Inc.*, No. CV-12-01538-PHX-ROS, 2013 WL 12284534, at *2 (D.

13 Ariz. June 27, 2013) ("The Ninth Circuit has not yet established whether communications between

14 clients, outside the presence of counsel, are subject to the privilege and other courts reached

15 conflicting conclusions.").

16      Notably, the common-interest doctrine applies differently to work-product protection. The

17 work-product doctrine protects non-opinion work product under a substantial need/undue hardship

18 test and affords near absolute protection to opinion work product. *Holmgren v. State Farm Mut.*

19 *Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). Work product "protection is waived where

20 disclosure of the otherwise privileged documents is made to a third party, and that disclosure

21 enables an adversary to gain access to the information." *Nidec Corp.*, 249 F.R.D. at 580 (cleaned

22 up). Thus, the common-interest doctrine preserves work-product protection over materials

23 communicated to third parties, so long as they generally share the client's interests and are not

24 adversaries, irrespective of whether they have representation. *Pulse Eng'g, Inc. v. Mascon, Inc.*,

25 No. CIV. 08cv0595 JM (AJB), 2009 WL 3234177, at *3 (S.D. Cal. Oct. 2, 2009); *Regents of Univ.*

26 *of Cal.*, 326 F.R.D. at 281 n.3 ("[C]ase law examining the common interest privilege in the work

27 product context does not necessarily require representation on all sides.").

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Concerning the temporal scope of the common-interest doctrine, it applies while the joint

2    agreement, which may be written or unwritten, is in effect. *United States v. Gonzalez*, 669 F.3d

3    974, 981 (9th Cir. 2012) ("If the communication occurred during the existence of the [joint

4    defense agreement], then it remains protected. . . . [I]f it was made after the joint defense efforts

5    ended . . . then that specific communication . . . may not be privileged."); *see also In re Pac.

6    Pictures Corp.*, 679 F.3d at 1129 (holding that the joint agreement between parties with a common

7    legal interest may be written or unwritten).

8

9                                              **ANALYSIS**

10   **1.  Attorney-Client Privilege**

11       The non-party witnesses' communications with lawyers — including their now-retained

12   counsel, Mr. Pillsbury, and other counsel they consulted for the purpose of obtaining legal advice

13   — are privileged, subject to the specific requirements set out in *Ruehle*. 583 F.3d at 607. The

14   privilege does not, however, extend to facts that would not reveal legal strategy or to information

15   such as the dates and duration of meetings with attorneys. *Gallegos*, 2017 WL 740813, at *1. In this

16   regard, the fact that a client reached a decision on some issue is not necessarily privileged "even if

17   that decision was informed by advice from legal counsel[]" because "[t]he privilege protects only

18   communications, not facts." *In re MacBook Keyboard Litig.*, 2020 WL 1265629, at *3.

19       For example, the following questions, which Ms. Maldonado declined to answer based in part

20   on attorney-client privilege, do not necessarily implicate privileged communications with counsel:

21   (1) "Ms. Maldonado, did you hire an attorney relating to the lawsuit that was filed by [the

22   plaintiff]?"; (2) "Was an attorney representing you on that telephone call [meaning the December

23   13, 2021 hearing before the district court]?"; (3) "Did you ask [the plaintiff] what Savannah's

24   rights were in connection with the lawsuit?"; (4) "When you had a disagreement with [the

25   plaintiff] about this case, was — were any attorneys present during the disagreement?"; and (5)

26

27

28

1  "Did you and [the plaintiff] have any disagreement over how to split any funds that may be paid in

2  connection with the resolution of this lawsuit?"[22]

3       Ms. Jordan also declined to answer questions that do not necessarily implicate privileged

4  communications. For example, she declined to answer the following questions: (1) "Prior to that

5  time had you ever hired an attorney to represent you in connection with your father's passing or

6  any incident relating to your father's passing?"; (2) "Did you ever hire John Hillsman to be your

7  attorney?"; and (3) "Did your mother ever express to you whether or not she had any

8  disagreements with [the plaintiff]?"[23]

9       Furthermore, defense counsel asked Ms. Brown, the decedent's sister, if she had any

10  disagreements with the plaintiff and Mr. Pillsbury instructed her not to answer if the

11  disagreements had "anything to do with this lawsuit or strategy or any communications with

12  lawyers."[24] Counsel's assertion of a blanket claim of privilege over any disagreements between the

13  decedent's sister and the plaintiff related to the lawsuit was unjustified.

14       The non-party witnesses must appear for continued deposition questioning and must answer

15  questions that do not implicate privileged communications with their counsel or information

16  protected under the common-interest doctrine.

17

18  **2.  Common-Interest Doctrine**

19       There are two issues concerning the applicability of the common-interest doctrine. First,

20  whether there is a shared legal interest between the plaintiff and the non-party witnesses that is

21  sufficient to establish protection under the common-interest doctrine. Second, whether the

22  common-interest doctrine applies to communications from before January or February 2022 when

23  the non-party witnesses retained counsel.

24

25

26  ───────────────

27  [22] Maldonado Dep. Tr., Ex. A to Schultz Decl. – ECF No. 140-1 at 12–13, 17, 21–22.

[23] Jordan Dep. Tr., Ex. B to Schultz Decl. – ECF No. 140-1 at 32–33, 40.

28  [24] Brown Dep. Tr., Ex. C to Schultz Decl. – ECF No. 140-1 at 53.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9

Regarding the common interests between the plaintiff and non-party witnesses in this case, the plaintiff asserts that the non-party witnesses have a common "fiduciary interest" to maximize the recovery of wrongful-death and survival damages.[25] As many courts, including the Ninth Circuit, have held, a mere desire to reap a financial benefit from a certain litigation outcome is not an interest that is sufficient to invoke the common-interest doctrine. *In re Pac. Pictures Corp.*, 679 F.3d at 1129; *see also Crosby v. Cal. Physicians' Serv.*, No. 8:17-cv-01970-CJC-JDE, 2020 WL 2510651, at *4 (C.D. Cal. Feb. 26, 2020) (holding that a desire to see the same outcome such that the defendants would have to pay the non-party medical provider for services to the plaintiff is insufficient to establish protection under the common-interest doctrine).

10
11
12
13
14
15
16
17
18
19

But in some contexts, a joint desire to maximize recovery may support application of the common-interest doctrine. For example, in bankruptcy cases, "[t]he debtor in possession and the committee of creditors share a duty to maximize the debtor's estate." *In re Mortg. & Realty Tr.*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997) (holding that the common-interest doctrine applied to communications between a debtor in possession and a creditor's committee because they "shared a common legal interest"); *see also Schaeffler v. United States*, 806 F.3d 34, 42 (2d Cir. 2015) ("[T]he fact that [a consortium of banks that lent money to the appellants] stood to lose a lot of money (along with appellants) if appellants' tax arguments failed is not support for the position that no common legal interest existed. To the contrary, it was the interest in avoiding the losses that established a common legal interest.").

20
21
22
23
24

Here, the plaintiff has a fiduciary duty to the estate as the estate's representative. The beneficiaries of the estate have an interest in maximizing recovery but, according to the plaintiff, "cannot bring suit apart from the personal representative."[26] *Calton v. Zapata Lexington*, 811 F.2d 919, 921 (5th Cir. 1987). Therefore, there is a common legal interest between the plaintiff and the non-party witnesses who are beneficiaries of the estate in maximizing recovery to the estate.

25
26
27
28

[25] Opp'n – ECF No. 145 at 8.

[26] *Id.* at 5.

Presumably, Ms. Jordan, the decedent's daughter, is the only one of the three non-party witnesses who is a beneficiary.[27]

Concerning the necessity of being represented by counsel and agreeing to pursue a joint legal strategy, the non-party witnesses did not have counsel until after December 2021 and likely not until January or February 2022.[28] During a December 2021 hearing before the district court, the parties discussed the interests of Ms. Jordan — who was at that time a minor — in a potential settlement.[29] The plaintiff's counsel said that he spoke to Ms. Jordan's mother, Ms. Maldonado.[30] But the court discussed "getting representation" for Ms. Jordan and defense counsel, with the court's approval, gave Ms. Maldonado her number, and invited her to call to discuss the case.[31] Regarding the nature of the settlement contemplated at that time, the plaintiff's counsel stated during the hearing that the plaintiff believed there was no settlement and intended "to go after an excess verdict."[32] The transcript of this hearing shows that, while the plaintiff may have decided to attempt to recover a verdict in excess of the defendants' insurance policy limits, there was no written or unwritten agreement between the plaintiff and the non-party witnesses to pursue a joint legal strategy in this regard as of December 2021.

Therefore, even if all the non-party witnesses had a common legal interest with the plaintiff, they could not have had an agreement to pursue a joint legal strategy until after December 2021, likely January or February 2022. *In re Pac. Pictures Corp.*, 679 F.3d at 1129 (holding that communications protected by the common-interest doctrine must be made "in pursuit of a joint strategy in accordance with some form of agreement").

---

[27] *Id.* at 5, 10 (referring to Ms. Jordan as a beneficiary without referencing the other non-party witnesses).

[28] Pillsbury Decl. ISO Opp'n – ECF No. 144-1 at 3, 5 (¶¶ 11, 18) (stating that Mr. Pillsbury and plaintiff's counsel signed a "Joint Prosecution Agreement" in January 2022 and that Ms. Jordan retained Mr. Pillsbury on February 18, 2022).

[29] Tr. of Dec. 13, 2021 Hr'g – ECF No. 71 at 5–6.

[30] *Id.* at 12.

[31] *Id.* at 12–14.

[32] *Id.* at 14.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   The common-interest doctrine preserves the privilege with respect to the plaintiff's

2   communications with the non-party witnesses who are beneficiaries of the estate (presumably,

3   only Ms. Jordan) that occurred after the date when such witnesses agreed with the plaintiff to

4   pursue a joint legal strategy with the assistance of their own counsel (January or February 2022).

5   The common-interest doctrine does not preserve privilege with respect to communications

6   between the plaintiff and the non-party witnesses who are not beneficiaries of the estate

7   irrespective of the date on which those communications occurred.

8   Accordingly, the non-party witnesses who are beneficiaries (Ms. Jordan) must answer

9   questions regarding their communications with the plaintiff that occurred before the date when

10  they reached an agreement with the plaintiff through the assistance of counsel. The non-party

11  witnesses who are not beneficiaries of the estate must answer questions regarding their

12  communications with the plaintiff and amongst themselves that are not otherwise privileged or

13  protected by the work-product doctrine.

14  Regarding material protected under the work-product doctrine that was shared with the non-

15  party witnesses, the protection over this material was not waived when the material was

16  communicated to any of the non-party witnesses because they are not adversaries of the plaintiff.

17  *Pulse Eng'g, Inc.*, 2009 WL 3234177, at *4 ("[T]he courts generally find a waiver of the work

18  product privilege only if the disclosure substantially increases the opportunity for potential

19  adversaries to obtain the information.") (cleaned up). Thus, communications discussing the legal

20  theories or legal strategy between the non-party witnesses and the plaintiff, plaintiff's counsel, or

21  Mr. Pillsbury remain protected.

22

23  **3. Document Productions**

24  The non-party witnesses withheld documents based on attorney-client privilege, the work

25  product doctrine, and the common-interest doctrine.[33] They did not provide a privilege log to the

26

27

---

28  [33] Objs. to Reqs. for Produc., Exs. D, E to Schultz Decl. – ECF No. 140-1 at 58–73.

defendants.[34] "If a party withholds material as privileged . . . it must produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified." *Prado v. Equifax Info. Servs. LLC*, No. 18-cv-02405-PJH (LB), 2019 WL 88140, at *3 (N.D. Cal. Jan. 3, 2019). If the non-party witnesses continue to withhold responsive documents based on the attorney-client privilege or the work product doctrine, they must identify the basis for the claimed protection in a privilege log.

## CONCLUSION

The non-party witnesses are ordered to appear for continued deposition questioning within fourteen days of this order and must answer questions that do not implicate information protected by the attorney-client privilege.

The common-interest doctrine applies only to preserve privilege over communications that occurred after the date when the non-party witnesses retained counsel (likely January or February 2022) and applies only to the extent the non-party witnesses are beneficiaries of the decedent's estate (presumably, this includes only the decedent's daughter, Ms. Jordan). To the extent material was protected under the work-product doctrine, the sharing of that material with the non-party witnesses did not result in a waiver of that protection.

The non-party witnesses must also produce any non-privileged responsive documents within fourteen days of this order and any documents withheld based on the attorney-client privilege or the work product doctrine must be identified in a privilege log. The court declines to compel counsel for the non-party witnesses or the plaintiff to pay the cost of re-noticing the depositions.

This resolves ECF No. 140.

**IT IS SO ORDERED.**

Dated: August 11, 2022

_____
LAUREL BEELER
United States Magistrate Judge

---

[34] Mot. – ECF No. 140.